## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 28 2019, 9:57 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Noah T. Williams
Monroe County Public Defender
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Natalie F. Weiss
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In Re the Matter of the Termination of the Parent-Child Relationship of R.P.;

S.P. (Mother),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

February 28, 2019

Court of Appeals Case No.
18A-JT-2152

Appeal from the Monroe Circuit Court

The Honorable Frances G. Hill, Judge

Trial Court Cause No.
53C06-1710-JT-793

**Pyle, Judge.**

# Statement of the Case

S.P. ("Mother") appeals the termination of the parent-child relationship with her son, R.P., ("R.P."), claiming that the Department of Child Services ("DCS") failed to prove by clear and convincing evidence that: (1) there is a reasonable probability that the conditions that resulted in R.P.'s removal will not be remedied; and (2) termination of the parent-child relationship is in R.P.'s best interests. Concluding that there is sufficient evidence to support the trial court's decision to terminate the parent-child relationship, we affirm the trial court's judgment.[1]

We affirm.

# Issue

> Whether there is sufficient evidence to support the termination of the parent-child relationship.

# Facts

The evidence and reasonable inferences that support the judgment reveal that R.P. was born in December 2015. In July 2016, DCS filed a petition alleging that R.P. was a Child in Need of Services ("CHINS") because Mother was addicted to methamphetamine and needed help to overcome her addiction. The petition further alleged that Mother had tested positive for

---

[1] The trial court also terminated J.G.'s ("Father") parental relationship with R.P. Father is not a party to this appeal.

methamphetamine twice in June 2016. She had also tested positive for THC in June and July 2016.

[4] In October 2016, the trial court adjudicated R.P. to be a CHINS. Specifically, the trial court's order, which allowed R.P. to remain in Mother's home, explained that given Mother's "addiction and drug usage, the coercive intervention of the court is clearly necessary to ensure the safety of [R.P.]" (Ex. Vol. at 9). The following month, the trial court ordered Mother to: (1) provide safe, suitable, and stable housing for her child; (2) allow DCS service providers and/or the CASA to complete announced and unannounced visits to the home; (3) abstain from alcohol and drug use and submit to random drug screens; (4) maintain a legal source of income; (5) participate and follow the recommendations of a substance abuse assessment; and (6) participate in home-based case management services.

[5] In February 2017, DCS recommended placing R.P. with his maternal grandmother ("Maternal Grandmother"). The trial court's order authorizing the placement stated that it was in R.P.'s best interest to be removed from Mother's home because he needed protection that could not be provided in the home. An April 2017 review hearing order provided that Mother was not in compliance with the CHINS dispositional order because she had continued to use illegal substances and she and her new boyfriend had both tested positive for methamphetamine. When asked to choose between caring for R.P. and living without electricity with her boyfriend, Mother chose living with her boyfriend.

[6] Following an August 2017 review hearing, the trial court found that Mother had not complied with the dispositional order and had not "resolved the reasons for the removal of [R.P.] from her care." (App. Vol. 2 at 9). The trial court specifically noted that Mother had continued to test positive for methamphetamines and THC. In addition, Mother had not been in compliance with home-based case management services and had cancelled visitation with R.P. The trial court also noted that the current conditions in Maternal Grandmother's house "create[d] an unacceptable safety risk to [R.P.]" (App. Vol. 2 at 10). The trial court therefore ordered R.P.'s removal from Maternal Grandmother and placement in foster care.

[7] DCS filed a petition to terminate Mother's parental rights in October 2017. Testimony at the May and July 2018 termination hearing revealed that Mother had not completed any of the court-ordered programs. In addition, she did not have stable housing or legal employment, and she continued to use drugs. She specifically admitted that she had used marijuana less than a month before the hearing and that she had also recently tested positive for methamphetamine. Also at the hearing, Mother admitted that she was "not physically stable to have [her] son in her home." (Tr. 152). However, she testified that she preferred R.P. to be placed with Maternal Grandmother.

[8] Salvation Army Harbor Lights Center Lead Assessment Counselor Whitney Beasley ("Counselor Beasley") testified that she had assessed Mother in November 2017 and then again in February 2018. Following the most recent assessment, Counselor Beasley had recommended that Mother attend an

intensive outpatient program based upon Mother's use of methamphetamine and marijuana. Harbor Lights Center Counselor Tracey Jordan testified that Mother had begun the intensive outpatient program in February 2018 but had been discharged the following month "due to excessive no call, no shows." (Tr. 94).

[9] Also at the hearing, DCS asked therapist Jennifer Zigler ("Therapist Zigler"), who had been one of Mother's therapists, whether Mother had been diagnosed with any disorders. Therapist Zigler responded that Mother had four diagnoses in her chart but that Therapist Zigler was not the therapist who had diagnosed Mother. Mother's counsel raised a hearsay objection because the therapist had not diagnosed Mother; however, the trial court determined that the evidence was admissible for "the basis for [the therapist's] work, but not necessarily for the . . . truth of whether that diagnosis was correct." (Tr. 50). Therapist Zigler testified that Mother had been diagnosed with amphetamine use, cannabis use, alcohol use and anxiety disorders.

[10] DCS Case Manager Heidi Flynn ("Case Manager Flynn") testified that Mother's substance abuse was the original reason for DCS involvement and that the reasons for R.P.'s removal from his home had not been remedied because Mother had failed to complete court-ordered services, including an intensive outpatient drug treatment program. In addition, Case Manager Flynn testified that Mother had unstable housing and employment and had made no progress with court-ordered

services. Case Manager Flynn also testified that termination was in R.P.'s best interests and that the permanency plan for R.P. was foster parent adoption.

[11] Lastly, CASA Roseanne Liggett ("CASA Liggett") testified that termination was in R.P.'s best interests because Mother was not able to provide a safe and stable home for him. CASA Liggett further testified that R.P. was thriving in foster care.

[12] Following the hearing, the trial court issued a detailed fourteen-page order terminating Mother's parental relationship with R.P. The order concluded, in relevant part, as follows:

> The Child was adjudicated CHINS based on Mother's admitted use and addiction to methamphetamines. The Review and Permanency Orders reflect Mother's positive tests for methamphetamines and marijuana through August 2017. Mother tested positive for marijuana in 2018. Mother admitted at this hearing to using marijuana in the last month. Although Mother testified in this hearing that she had not used methamphetamine since August 2017, Mother admitted that she had a positive drug screen for methamphetamine during the next to last hearing. The two substance abuse professionals assessing and/or counseling Mother from Harbor Lights Drug Treatment through April 2018 testified that Mother needs Intensive Outpatient Treatment and Inpatient Transitional Housing. . . . Mother did not complete the IOP or the recommended drug treatment to ensure sobriety if the Child was returned to her care. While marijuana use alone might not support a termination conclusion, Mother's long history of methamphetamine use despite the availability of treatment programs, with an ongoing recommendation for drug treatment, constitutes clear and convincing evidence that Mother continues to have a drug problem and that creates a danger to the Child that will not be remedied.

(App. at 18-19).  Mother now appeals.

# Decision

Mother argues that there is insufficient evidence to support the termination of her parental rights.  The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children.  *In re K.T.K.,* 989 N.E.2d 1225, 1230 (Ind. 2013).  However, the law provides for termination of that right when parents are unwilling or unable to meet their parental responsibilities.  *In re Bester*, 839 N.E.2d 143, 147 (Ind. 2005).  The purpose of terminating parental rights is not to punish the parents but to protect their children.  *In re L.S.,* 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

When reviewing the termination of parental rights, we will not weigh the evidence or judge the credibility of the witnesses.  *K.T.K.*, 989 N.E.2d at 1229.  Rather, we consider only the evidence and reasonable inferences that support the judgment.  *Id*.  Where a trial court has entered findings of fact and conclusions thereon, we will not set aside the trial court's findings or judgment unless clearly erroneous.  *Id.* (citing Ind. Trial Rule 52(A)).  In determining whether the court's decision to terminate the parent-child relationship is clearly erroneous, we review the trial court's judgment to determine whether the evidence clearly and convincingly supports the findings and the findings clearly and convincingly support the judgment.  *Id.* at 1229-30.

A petition to terminate parental rights must allege:

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

IND. CODE § 31-35-2-4(B)(2). DCS must prove the alleged circumstances by clear and convincing evidence. *K.T.K.,* 989 N.E.2d at 1231.

[16] Here, Mother argues that there is insufficient evidence to support the termination of her parental rights. Specifically, she first contends that the evidence is insufficient to show that there is a reasonable probability that the conditions that resulted in R.P.'s removal will not be remedied. In determining whether the conditions that resulted in a child's removal or placement outside the home will not be remedied, we engage in a two-step analysis. *In re E.M.,* 4 N.E.3d 636, 643 (Ind. 2014). We first identify the conditions that led to removal or placement outside the home and then determine whether there is a reasonable probability that those conditions will not be remedied. *Id.* The second step requires trial courts to judge a parent's fitness at the time of the

termination proceeding, taking into consideration evidence of changed conditions and balancing any recent improvements against habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *Id.* Habitual conduct may include parents' prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and a lack of adequate housing and employment. *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1157 (Ind. Ct. App. 2013), *trans. denied*. The trial court may also consider services offered to the parent by DCS and the parent's response to those services as evidence of whether conditions will be remedied. *Id.* Requiring trial courts to give due regard to changed conditions does not preclude them from finding that a parent's past behavior is the best predictor of his future behavior. *E.M.*, 4 N.E.3d at 643.

[17] Here, our review of the evidence reveals that R.P. was adjudicated to be a CHINS in October 2016 because of Mother's drug use. Nearly two years later, Mother was still using drugs and had not completed any of the court-ordered services. She also lacked stable housing and employment. Mother even admitted at the termination hearing that she was not physically stable enough to care for her son. This evidence supports the trial court's conclusion that there was a reasonable probability that the conditions that resulted in R.P.'s placement outside the home would not be remedied. We find no error.

[18] Mother also argues that there is insufficient evidence that the termination was in R.P.'s best interests. In determining whether termination of parental rights is in the best interests of a child, the trial court is required to look at the totality of

the evidence. *In re D.D.*, 804 N.E.2d 258, 267 (Ind. Ct. App. 2004), *trans. denied*. In so doing, the court must subordinate the interests of the parents to those of the child involved. *Id.* Termination of the parent-child relationship is proper where the child's emotional and physical development is threatened. *In re R.S.*, 774 N.E.2d 927, 930 (Ind. Ct. App. 2002), *trans. denied*. "'A parent's historical inability to provide adequate housing, stability and supervision coupled with a current inability to provide the same will support a finding that continuation of the parent-child relationship is contrary to the child's best interest.'" *In re B.D.J.*, 728 N.E.2d 195, 203 (Ind. Ct. App. 2000) (quoting *Matter of Adoption of D.V.H.*, 604 N.E.2d 634, 638 (Ind. Ct. App. 1992), *trans. denied, superseded by rule on other grounds*). Further, the testimony of the service providers may support a finding that termination is in the child's best interests. *McBride v. Monroe Cty. Office of Family and Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003).

[19] Here, our review of the evidence reveals that Mother has historically been unable to provide housing, stability, and supervision for R.P. and was unable to provide the same at the time of the termination hearing. In addition, both Case Manager Flynn and CASA Liggett testified that termination was in R.P.'s best interests. The testimony of these service providers, as well as the other evidence previously discussed, supports the trial court's conclusion that termination was in R.P.'s best interests. [2]

---

[2] Mother also argues that the trial court abused its discretion in allowing Therapist Zigler to testify that Mother had been diagnosed with amphetamine use, cannabis use, alcohol use and anxiety disorders. The admission and exclusion

[20] We reverse a termination of parental rights "only upon a showing of 'clear error'—that which leaves us with a definite and firm conviction that a mistake has been made." *Egly v. Blackford Cty. Dep't of Pub. Welfare*, 592 N.E.2d 1232, 1235 (Ind. 1992). We find no such error here and therefore affirm the trial court.

[21] Affirmed.

Najam, J., and Altice, J., concur.

---

of evidence falls within the sound discretion of the trial court, and we review the admission of evidence only for an abuse of discretion. *Wilson v. State*, 765 N.E.2d 1265, 1272 (Ind. 2002). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Conley v. State*, 972 N.E.2d 864, 871 (Ind. 2012), *reh'g denied*. However, we need not determine whether the trial court abused its discretion by admitting Mother's diagnoses because even if it was erroneous to admit this evidence, any error was harmless. "The improper admission of evidence is harmless error when the judgment is supported by substantial independent evidence to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the judgment." *In re E.T.,* 808 N.E.2d at 639, 645-46 (Ind. 2004). Here, there is overwhelming evidence of Mother's dependence on methamphetamine and marijuana. Further, the trial court's conclusions of law in support of its judgment terminating Mother's parental rights do not refer to Mother's alcohol use or anxiety. Moreover, we have found substantial independent evidence to satisfy us that there is no substantial likelihood that the questioned evidence contributed to the judgment. Any error in the admission of this evidence was therefore harmless.